IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOHN ANTHONY,

                                    Plaintiff,                          OPINION AND ORDER

          v.                                                           18-cv-970-wmc

JASSEN HINCHLEY and
KARL HOFFMAN,

                                    Defendants.

          *Pro se* plaintiff John Anthony, who is currently incarcerated at New Lisbon
Correctional Institution, is proceeding in this lawsuit against two New Lisbon employees
for their alleged failure to account for his tuna fish allergy, in violation of the Eighth
Amendment and Wisconsin law.  In particular, Anthony claims that in July of 2018, he
suffered a severe allergic reaction to tuna because: (1) Dr. Karl Hoffman mishandled his
treatment for the allergy; and (2) Food Supervisor Jassen Hinchley failed to modify his diet
to prevent exposure to tuna fish.  Defendants filed a motion for summary judgment (dkt.
#26), to which Anthony filed a cross-motion as to his claim against Hinchley (dkt. #33).
Subsequently, Anthony voluntarily withdrew his claim against Dr. Hoffman (*see* dkt. #41),
so the court will grant defendants' motion as to defendant Hoffman, and will take up the
parties' competing motions for summary judgment as to the remaining claims against
defendant Hinchley in this opinion.

          Specifically, based on the undisputed evidence of record, defendant Hinchley is also
entitled to summary judgment because he lacked the authority to modify Anthony's diet
as a Food Supervisor before his allergic reaction, and there is no evidence from which a

reasonable jury could find that he negligently, much less deliberately, ignored the risk of Anthony being severely harmed if he were exposed to tuna. Accordingly, the court will grant defendants' motion in full, deny Anthony's cross-motion, and direct entry of final judgment in defendants' favor.

## UNDISPUTED FACTS[1]

In 2018, plaintiff John Anthony was incarcerated at New Lisbon, where defendants Jassen Hinchley and Dr. Karl Hoffman were working as the Food Service Supervisor and a physician, respectively. Dr. Hoffman first met with Anthony in May of 2018 for complaints about an itchy rash and throat. Dr. Hoffman noted lesions with a hint of blistering, and he assessed Anthony with recurrent hives with no established trigger. Given the uncertainty as to a cause, Dr. Hoffman referred Anthony for an allergy consult, and an off-site service request was placed by the New Lisbon Health Services Unit ("HSU"). Anthony attests that around the same time, he had also started to avoid fish products, having experienced physical reactions to certain types of fish.

A week after seeing Dr. Hoffman, a nurse met with Anthony for complaints of red areas on his back, chest, arms and legs. The nurse consulted with Dr. Hoffman, who placed another order for allergy tests.

On June 12, 2018, Anthony had his blood drawn for a fish allergy panel, which revealed a moderate allergy to tuna, meaning that his allergic symptoms spread to other

---

[1] Unless otherwise indicated, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying record evidence as appropriate.

parts of the body, including itchiness, hives and/or swelling and trouble breathing.  After reviewing this test result, Dr. Hoffman wrote an order directing that Anthony not have tuna in his diet.  He also wrote a memo to Anthony, advising him of his allergy to tuna and telling Anthony to avoid tuna, including not ordering it through the canteen. However, Dr. Hoffman neither told Anthony that he should not eat from a tray with tuna present, nor that he required a diet tray that omitted tuna.

After that, when tuna was served, Anthony would ask staff for a tray without it, but those requests were denied.  Instead, he was simply told "to avoid" the tuna on the tray. As a result of requiring him to "self-select," Anthony maintains that the tuna would cross-contaminate the other food items present on his tray, which he could otherwise eat.

At the beginning of July, Anthony told defendant Hinchley about his tuna allergy in his position as Food Supervisor, stating he needed a diet tray that excluded tuna. Hinchley responded that Anthony should just "eat around" the tuna.   Anthony's impression was that Hinchley was more concerned that the tray contain a certain number of calories than about Anthony's allergy.

On July 9, 2018, Anthony sent defendant Hinchley an "Information Request," stating that Dr. Hoffman advised him of his tuna allergy and that he needed a special diet tray.  Hinchley responded two days later that consistent with DOC policy, there was no substitute given for a fish allergy, and instead, inmates may self-select from the general menu.  Hinchley further attests that he and other Food Service staff do not have the authority to create diet orders or implement a special diet at an inmate's request.  Rather, the DOC has a policy that if a health services unit ("HSU") staff member deems a modified

3

diet necessary because of a fish allergy, an HSU staff member may order a modified diet.

On July 12, a nurse completed a Modified Diet Order, which identified Anthony as having a tuna fish allergy. However, the order did not include a requirement that Anthony receive a diet tray or a tray without any fish or tuna on it. The Food Service Department received that order, which Dr. Hinchley acknowledges he would have received as well. Hinchley further explains that it was his practice to send a Diet Order Acknowledgement form to each inmate receiving a special diet, which would detail the items that should be on their trays.

On July 13, Anthony again received a meal tray that included tuna. Anthony attests that despite avoiding the tuna while eating the other items on his meal tray, he began to experience the following, cascading symptoms shortly after eating his meal: he had trouble breathing; his skin felt hot and broke out in hives; he felt dizzy, lightheaded and his heart started racing; and he lost consciousness. Anthony was then placed in a wheelchair and escorted to the HSU, where he was given Benadryl. A nurse examined Anthony, during which he reported that his tongue felt swollen and he could not breathe. While examining him, however, the nurse found Anthony had a normal blood pressure, no swelling, clear lungs and no display of stress. Dr. Hoffman also examined Anthony and found no sign of distress. Still, although Dr. Hoffman did not diagnose Anthony as having an allergic reaction that day, he wrote an order that Anthony should not receive tuna on his tray, and that Anthony should have access to an Epi Pen. The next day, July 13, a nurse also completed a Modified Diet Order, which identified Anthony as having a tuna allergy and directed that no tuna should be placed on his tray.

4

A few days after this incident, July 17, Hinchley received Anthony's original Modified Diet Order, dated July 12, which did *not* include the nurse's directive on the July 13 order that there should be no tuna on Anthony's tray.  As a result, in completing the Diet Order Acknowledgement form based on the July 12 order, and because that order did not include a "diet tray," "no fish tray," or other, similar instruction, Hinchley understood that Anthony should continue to self-select foods on his tray to address his allergy.  Thus, he checked the box indicating Anthony would not receive a diet tray, and should be able to self-select to receive adequate nutrition.  (*See* Ex. 1004 (dkt. #29-4).)  Although Hinchley acknowledges that the HSU can include a "no fish on tray" requirement, that order from HSU was not in place as of Anthony's July 13 reaction.

Hinchley does not recall Anthony having an allergic reaction to tuna, nor does he remember being informed of the July 13 incident.  Hinchley further explains that it was uncommon for inmates with fish allergies to receive a diet tray.  He further states that, at that time he would not have observed how workers serving the food placed it on the tray, but his understanding was that the separate food items would be served separately, meaning that Anthony could have avoided the tuna on his tray.

In November 2018, New Lisbon started removing tuna from its menu.  The parties dispute exactly how often tuna has been served since that date, but Anthony says that tuna has shown up in meal bags when the institution is running on a modified schedule.  Regardless, there is no dispute that Hinchley has not modified the Diet Order Acknowledgement form that he sent Anthony on July 17, 2018.  In late January of 2022, Anthony wrote to Hinchley, advising that he received a meal bag that contained fish, and

5

staff would not provide him a bag without the fish.

## OPINION

Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If there is any genuine issue as to any material fact, the court cannot grant summary judgment. *Id*. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Finally, "[t]he evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id*. at 255.

The Eighth Amendment gives prisoners the right to receive adequate medical care, *Estelle v. Gamble*, 429 U.S. 97 (1976). To prevail on a claim of constitutionally inadequate medical care, an inmate must demonstrate two elements: (1) an objectively serious medical condition; and (2) a state official who was deliberately (that is, subjectively) indifferent. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). First, a medical need is "serious" if it: so obviously requires treatment that even a lay person could recognize the need for medical attention; carries risk of permanent serious impairment if left untreated; results in needless pain and suffering; *or* significantly affects an individual's daily activities. *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997). Second, "deliberate indifference" is a high standard; it means that the

6

official was aware that the prisoner faced a substantial risk of serious harm but disregarded that risk by consciously failing to take reasonable measures to address it. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Thus, acts of deliberate indifference requires *more than* negligence, or even gross negligence, but requires something less than *purposeful* acts. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

The threshold for deliberate indifference is met where: (1) "the official knows of and disregards an excessive risk to inmate health or safety"; *or* (2) "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* he or she draws that inference yet deliberately fails to take reasonable steps to avoid it. *Id*. at 837; *see also Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) ("While evidence of malpractice is not enough for a plaintiff to survive summary judgment on an Eighth Amendment claim, nor is a doctor's claim he did not know any better sufficient to immunize him from liability in every circumstance."); *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in nature in the criminal sense").

Under Wisconsin law, the elements of a claim for negligence are: (1) a duty of care or a voluntary assumption of a duty on the part of the defendant; (2) a breach of the duty, which involves a failure to exercise ordinary care in making a representation or in ascertaining the facts; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 307 (1987).

7

Plaintiff maintains that he is entitled to summary judgment against Hinchley because he knew about his tuna allergy but refused to place him on a special diet that would prevent exposure to that allergen. Defendants seek summary judgment as to Hinchley on both the objective and subjective prongs of the Eighth Amendment claim, and on the merits of the negligence claim.[2] To begin, there are disputes of fact as to the severity of the symptoms Anthony experienced on July 13: Anthony maintains that he could not breathe and lost consciousness, while defendants point out that by the time staff intervened Anthony did not show *any* signs of distress. As such, the objective element of Anthony's Eighth Amendment claim cannot be resolved at summary judgment, and the court focuses on the subjective element of the Eighth Amendment claim and whether Hinchley breached a duty of care.

Hinchley is entitled to summary judgment because no evidence suggests that Hinchley breached a duty of care to Anthony, much less consciously disregarded Anthony's allergy. More specifically, there is no evidence to suggest that Hinchley believed Anthony's tuna allergy might be severe enough to create a risk of harm absent a special diet tray. Rather, the evidence of Hinchley's knowledge of the tuna allergy is Anthony's request for information, and their conversation in early July, when Anthony told him that he had a tuna allergy and asked for a special diet tray. Anthony does not even claim to have told Hinchley about Dr. Hoffman's assessment of the severity of his allergy or suggest that Dr. Hoffman ordered a special diet tray, much less that he told Hinchley that his allergic reaction was severe or life threatening, requiring that no tuna be on his tray.

---

[2] Defendants raise other arguments in favor of summary judgment, which the court need not reach.

In fact, at that point, *no medical professionals* considered his allergy severe enough to warrant a special diet tray.  Instead, Anthony stated his desire for the tray, but prisoners are not entitled to "demand specific care" or the "best care possible."  *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (the Eighth Amendment does not entitled prisoners to "demand specific care" or to the "best care possible").  Therefore, Hinchley's failure to grant Anthony's personal request for a diet tray before July 13 could not violate the Eighth Amendment.

Moreover, no evidence suggests that when Hinchley reviewed the July 12 order from HSU, he should have modified Anthony's tray to a special diet.  The July 12 order from HSU did *not* direct that Anthony receive a special diet tray, and there is no evidence that Hinchley knew about Anthony's July 13 reaction when he reviewed that order.  At most, the July 12 order may have confirmed Anthony's claim of a tuna allergy, but even then, HSU had not ordered a special diet, and Hinchley's reasonable understanding from the order was that Anthony could continue to self-select from the regular meal trays.  Finally, while Anthony takes issue with defendants' reference to "self-select," claiming that Dr. Hoffman never directed him to self-select, Dr. Hoffman did not need to use those precise words to communicate the concept, and there is no dispute that Dr. Hoffman delivered that exact message by directing Anthony to avoid tuna during meals and not to buy canteen items containing tuna.

In short, no evidence of record shows that Dr. Hoffman or any other HSU staff member directed Food Services to make *any* adjustments to his diet until *after* his July 13 reaction.  Accordingly, Anthony cannot fault Hinchley for declining to overstep his

authority:  "Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

Anthony's other arguments in opposition to summary judgment fail as well.  To start, he contends that Hinchley failed to follow DOC policies that require inmates with allergy diets for medical reasons to receive a modified diet order.  However, those policies only permit *health care professionals* to authorize allergy diets, and thus, as a food worker, there is no material dispute that Hinchley could only approve a special diet tray if ordered by a medical professional.

Similarly, Anthony contends that Hinchley had the authority under DOC policies to place him on a short-term diet without approval of an advanced care provider.  However, the policy Anthony cites is DAI Policy 500.30.24(II)(C), which contemplates such a diet only when necessary for an upcoming procedure or a temporary illness for a maximum of 48 hours.  (*See* Ex. 1002 (dkt. #29-2) 3.)  Those circumstances were not present before Anthony's allergic reaction.  Regardless, this policy is not evidence that Hinchley, who not a health care worker of any kind, could have or should have ordered a short-term, modified diet for Anthony.

Finally, Anthony's more recent evidence of his January 2022 communication to Hinchley about fish in meal bags does not change this result.  In fairness, once Anthony's Modified Diet Order included the language "no tuna on tray," Hinchley could have ordered that Anthony receive a special diet tray to ensure tuna was excluded, but even now, there is no evidence from which a reasonable jury could find that Hinchley knew Anthony actually needed special diet tray and refused to provide it.  For example, Anthony has not

submitted evidence that since his July 2018 allergic reaction, he informed Hinchley that he has since experienced similar symptoms upon exposure to meals containing tuna.  Even if he had, his remedy is in the HSU in the first instance to obtain an order further restricting his diet.   Therefore, no reasonable factfinder could conclude that Hinchley has ever breached a duty of care owed to Anthony, much less consciously disregarded Anthony's tuna allergy.  Accordingly, Hinchley is entitled to summary judgment on the merits of both the Eighth Amendment and negligence claims, and the court will grant defendants' motion in full.

ORDER

IT IS ORDERED that:

1.  Defendants' motion for summary judgment (dkt. #26) is GRANTED.

2.  Plaintiff John Anthony's motion for partial summary judgment (dkt. #33) is DENIED.

3.  The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered this 27th day of February, 2023.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

11